## THE DRUMELTON.

### (District Court, S. D. New York. December 13, 1907.)

1. SEAMEN—INJURY IN SERVICE—DUTY OF VESSEL TO PROCURE MEDICAL ATTENDANCE.

   Where a seaman serving on a bark on a voyage from New York to South Africa had his leg broken, and the bones were set by an officer, and he was given good care, the vessel was not under duty two or three weeks afterward to go 200 miles out of her course to obtain medical treatment at Cape Verde Islands, of which she had no chart, there being no request therefor by the injured man nor apparent necessity for it, and no evidence that competent medical attendance could have been there procured.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, § 39.]

2. SAME—LIABILITY OF VESSEL FOR INJURY TO SEAMEN—DEFECTIVE STRUCTURE OF VESSEL.

   Where an engine cover fell from a deckhouse on a vessel, and injured a seaman by reason of the insufficient fastening of a cleat to which it was lashed, which cleat was a permanent fitting of the vessel, the defect rendered her unseaworthy, and liable to the seaman for his injury, whether the cleat was fastened by the builders or by the officers of the ship after she was in commission.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, § 188.

   Rights and liabilities of seamen as to medical treatment, see note to The Cuzco, 83 C. C. A. 186.]

### In Admiralty. On final hearing.

Libelant was a seaman on the Drumelton, bound from New York to South Africa. On the voyage a wooden donkey engine cover weighing over 200 pounds fell from the forward deckhouse to the spar deck, breaking Lincoln's leg. He was cared for as well as the conveniences on the ship permitted, and his leg set by one of the officers. At the time of trial libelant was in good health for a man of 67, but his leg was crooked; the broken pieces of bone having partially slipped past each other, owing probably to unskillful setting.

Between two and three weeks after the injury the Drumelton passed within about 200 miles of the Cape Verde Islands. Libelant never requested that the ship put in there. The libel claims damages for the original injury, and for not putting in to the Cape Verde Islands for surgical assistance.

Abbott & Coyne, for libelant.

Convers & Kirlin, for claimant.

HOUGH, District Judge. The damage claim for failure to put into the Cape Verde Islands is very clearly an afterthought. Indeed, so far as the testimony shows, libelant has never thought of it down to the trial. He was humanely treated, and given the best care that the ship could afford. There was nothing in the nature of a leg fracture, supposed to be of one of the small bones only, to leave the master "no alternative, as a reasonable and prudent man exercising a sound judgment and acting for the best interests of all concerned, but to depart from the usual course of his voyage." There is no evidence that competent medical assistance could have been obtained at Cape Verde, and there is evidence that it would have been distinctly dangerous for a vessel of the size of the Drumelton to go there, being wholly unprovided with proper charts. I think this portion of the case falls far short of the rules laid down in the Cuzco, 154 Fed. 177, 83 C. C. A. 181.

According to libelant's belief (and he seemed a very honest seaman), the donkey engine cover fell upon him because proper lashings, although provided, had not been made fast. If this be true, he is certainly not entitled to any recovery under the fourth statement of law in The Osceola, 189 U. S. 175, 23 Sup. Ct. 483, 47 L. Ed. 760. But in this explanation of the accident I think he is mistaken. There is no reason to doubt the evidence of the ship's officers that the cover fell because the lashings were by the force of the sea or the wind, or both, torn from their fastenings, and that by such violence at least one cleat to which the lashing was attached was wrenched from the deck. If this accident had occurred through peril of the sea in any proper sense of that phrase, it would be equally true that the libelant would not be entitled to a recovery, and the entries in the log and some of the testimony on the part of the claimant are clearly calculated to produce the impression that this tearing out of the cleat was the unavoidable result of extraordinary sea violence. But the testimony does not bear out the argument based on this assumption. At the time of injury this four-masted bark was carrying all sail, except, perhaps, her outer jib and certainly her royals, and during the sea day covering the time of the injury she maintained substantially the same sail and averaged over 10 knots an hour. These facts cannot be overlooked, and prevent the belief that the cleat was torn from its bed by unusual violence of the ocean. I am convinced that the injury was received because the cleat was insufficient and unfit for the force which might reasonably be expected to affect it, and which did actually tear it out. If this be true, as I think it is, the Drumelton was in respect of this cleat unseaworthy; that is, she had a permanent appliance, a part of her structure, not reasonably fitted to withstand the usage ordi-

narily to be expected in the course of an ordinary voyage. This I believe to be the doctrine of the second declaration of law in The Osceola, supra. The distinction between that which is a permanent and irremovable part of the structure of a vessel and that which is detachable and in its use temporary is well illustrated by the judgment in Hedley v. Pinckney & Sons S. S. Co. (1894) App. Cases, 222. The failure in that case to put and maintain in place the stanchions and rails which were designed to prevent such accident as was there considered was negligence of the master and officers; but, if no stanchions and rails had been provided, or if put in place had been insufficient for the reasonably to be expected violence of the sea, the judgment in the case cited would have been different.

It is, however, ingeniously argued, that because the defectively fastened cleat was in and of itself a good cleat, fastened with good spikes and put in place by the officers of the ship themselves, the fastening of this good cleat with good spikes to a weak piece of wood was negligence, and no more. This proves too much, for it would necessarily follow that an owner might hand his vessel over to the master and officers incomplete in numerous minor, but vital details, leaving it to them to finish the ship, and then claim, if defects appeared, that the vessel was not unseaworthy, because the defective workmanship resulting from the labors of the master and officers was no more than negligence in the operation or management of the vessel. This cannot be. The ship and her permanent appliances constitute an entirety, and it can make no difference whether such entirety be produced by the labors of the officers and master or those of a shipwright. The defect of unseaworthiness is the same defect, whether it be the result of workmanship before or after she is in commission.

For these reasons, I think Lincoln is entitled to some indemnity for his injuries. Considering his age, the full payment of all his wages and expenses, and the great consideration with which he was treated by his superiors, I think a small indemnity will be sufficient.

There will be a decree for the libelant for $600, and costs.