## BERG v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania. June 28, 1920.)

No. 4824.

1. **Master and servant** ⟨⟩120—**Shipowner liable for seaman's injury from defective appliance.**

Failure of the owner of a barge to maintain in proper condition an eyebolt in the deck, which was a necessary appliance in using the donkey engine for hauling on another barge, *held* to render it liable for indemnity to a seaman, operating the donkey engine, whose injury was caused by the breaking of a hook, which, owing to the bent position of the eyebolt, could not be properly attached.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Admiralty ⟨key⟩2—Federal court has jurisdiction at law to enforce maritime right.**

A federal court has jurisdiction of an action at law to enforce a right arising under the maritime law, where there is the requisite diversity of citizenship and amount involved, but such right is measured by the maritime law.

At Law. Action by Carl A. Berg against the Philadelphia & Reading Railway Company. On motion by defendant for new trial. Denied.

Karl G. Kirsch, of Philadelphia, Pa., and S. B. Axtell, of New York City, for plaintiff.

William Clarke Mason, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff, a seaman on the barge Wiconisco, owned and operated by the Philadelphia & Reading Railway Company, received injuries on the barge while at sea, for which he brought suit to recover damages in a common-law action. The plaintiff was operating a donkey engine on the barge while in New York Harbor, where it, with a number of others, had been towed for anchorage because of threatening weather on a voyage fom Philadelphia to Portland. When the accident occurred, the Wiconisco was operating her steam winch in pulling up another barge. The hook had been caught into an eyebolt fastened into the deck to hold the snatch block in place, when the strain upon the line caused the hook to break, causing the snatch block to fly out and the line to strike the plaintiff's leg, causing the injury complained of.

There was evidence on the part of the plaintiff to show that the eyebolt was bent and twisted in such manner that, instead of the eye being upright, it inclined towards the deck to such an extent that the hook could not be inserted from below, and in inserting it from above the point of contact of the hook with the eyebolt was such that, instead of a direct pull upon the hook, it not being properly seated, its bearing upon the eyebolt was some inches nearer the point of the hook than if properly seated, and the leverage caused it to break. There was no latent or patent defect in the hook itself.

There was evidence on the part of the defendant that the accident was caused through the plaintiff's negligence in taking too many turns of the line around the drum before starting the winch.

[1] The cause of the plaintiff's injury was alleged in the statement of claim to be the failure of the defendant to provide a block and tackle and the attachments and fittings thereof for use on the donkey engine, of a sufficient size, adequate strength, and quality for the uses and purposes to which it was necessarily put, and in that no suitable tackle was provided by the defendant, its agents, servants, and employés, for the carrying on of the work required of the plaintiff on board the barge.

I think the eyebolt, without which the block and tackle used on the donkey engine could not have been employed in hauling in the other barge, is included within the "attachments and fittings," and that the evidence that the eyebolt was so bent as not to permit the seating of the hook to its normal position was sufficiently set out in the allegation

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of lack of sufficient size and quality. The question whether the eyebolt was bent, and the bending caused the accident, was left to the jury, as was also the question of the plaintiff's negligence.

The charge of negligence and claim for indemnity is based upon the rule laid down in The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760:

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to such ship."

The defendant contends that, if there was a defect in the eyebolt, that fact was not evidence of unseaworthiness, relying on the cases of Hanrahan v. Pacific Transport Co. (C. C. A.) 262 Fed. 951, and The Santa Barbara (C. C. A.) 263 Fed. 369.

In the Hanrahan Case the injury arose from the temporary absence of a handrail while the vessel was lying alongside the wharf discharging cargo, and the plaintiff, who was also suing at law for a maritime injury, was held not entitled to indemnity, because, if there was negligence which caused the injury, it was the negligence of the master or other officers in not placing or causing to be placed in position the handrail. There was no charge in the case that no handrail had been supplied, or that it was out of order, but merely that it had not been put up.

In the Santa Barbara Case, the negligence charged was a failure to maintain in position while at sea a chain for use in cleaning the smokestack. In Judge Hough's opinion, he says:

"The chains were supplied; whether unseaworthiness would have resulted, had that not been done, is a matter not before us. Whether they should be 'maintained,' or retained in the pulleys, and left stretched along the guys, contributing weight without strength, while the steamer tossed at sea, is a matter wholly within the discretion of the captain. If that discretion was unwisely exercised, it was at most no more than his personal negligence in handling or mishandling good and proper appliances duly furnished by the owners. As nothing was defective in fit or material, and everything suggested as proper, even by libelant's proctor, was provided for the ship, we hold that no unseaworthiness was shown."

The cases cited may be readily distinguished from that at bar, where the eyebolt was an essential attachment to the block and tackle for the purposes to which it was to be put when the donkey engine was operating. The failure to supply a proper eyebolt and to keep it in order brings the case under the rule of The Osceola, and renders the vessel and owner liable to indemnity for injuries, and not for mere maintenance and cure.

[2] The defendant raises the question whether the federal courts have jurisdiction in a common-law action to apply maritime remedies, and relies upon the decisions in Chelentis v. Luckenbach Steamship Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171, and Knickerbocker Ice Co. v. Stewart (No. 543, October Term, 1919) 253 U. S. ——, 40 Sup Ct. 438, 64 L. Ed. ——. A careful reading of these cases has failed to convince me that Mr. Justice McReynolds' opinions are susceptible of the construction asserted.

In the Chelentis Case, it is broadly held that Judiciary Act 1789, § 9, giving exclusive original admiralty and maritime jurisdiction to the District Courts, saving "to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it," recognizes the fundamental distinction between rights and remedies, and allows a right sanctioned by maritime law to be enforced through an appropriate common-law remedy, but does not give a plaintiff his election to have the defendant's liability measured by common-law standards, instead of those prescribed by the maritime law.

And in the Knickerbocker Ice Co. Case, 253 U. S. ——, 40 Sup. Ct. 438, 64 L. Ed. ——, it is held that the statute of October 6, 1917, adding to the jurisdiction clause of section 9 of the act of 1789 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1233) the words "and to claimants the rights and remedies under the Workmen's Compensation Law of any state," does not enlarge the rights of a plaintiff suing at common law, because Congress has no power to delegate its authority to legislate concerning maritime rights and liabilities in a manner to interfere with the harmonious and uniform administration of maritime jurisdiction throughout the United States.

In both cases Workmen's Compensation Laws of New York (Consol. Laws, c. 67), were claimed to be applicable to the relief sought. Jurisdiction to entertain on the common-law side of the court an action to enforce maritime rights was distinctly recognized in the Hanrahan Case by the Circuit Court of Appeals for the Second Circuit, and I construe the Chelentis Case as also recognizing jurisdiction in the federal courts.

The jurisdiction conferred under section 24 of the Judicial Code (Comp. St. § 991) over all suits of a civil nature, at common law, where the matter in controversy exceeds the sum or value of $3,000, between citizens of different states, gives the District Courts, within the limitations expressed, jurisdiction, where the state courts would have jurisdiction, so that causes arising out of maritime rights may be brought in the federal courts in all cases where they may be brought in the state courts, subject to diversity of citizenship and jurisdictional amount, but the rights of the plaintiff may be enforced only according to maritime law.

The damages were not, in my opinion, excessive, even if the jury found that the plaintiff was guilty of contributory negligence and divided the damages. The plaintiff was seriously crippled by breaking up of the bones of one leg, which is twisted and materially shorter than the other, with a possibility of lessening the shortening by a serious and complicated operation.

The motion for a new trial is denied.