### PHILADELPHIA & R. R. CO. v. BERG.*

(Circuit Court of Appeals, Third Circuit. June 28, 1921.)

#### No. 2627.

1. **Master and servant** ☞264(12)—**Evidence of defective eyebolt held to support allegation of negligence in providing "tackle."**

In an action for personal injury by a seaman on a barge, an allegation in the statement of claim, that the defendant was negligent, "in that no suitable tackle was provided * * * for the carrying on of the work required of this plaintiff on the said barge," *held* supported by evidence that an eyebolt in the deck in which the hook of a snatch block in use in hauling another barge alongside was inserted was so bent that only the point of the hook was engaged, causing the hook to break under the strain; such hook being a part of the "tackle," within the meaning of that word as used in the statement.

2. **Trial** ☞309—**Inspection by jury may be determinative.**

On the question of the cause of the breaking of a hook, held by an eyebolt, where the jury had the hook and eyebolt before it, together with testimony that the eyebolt was in such bent position that only the point of the hook could be inserted therein, the issue is not wholly dependent on the oral testimony, but may be determined by the jury from their inspection.

3. **Admiralty** ☞2—**District Court has jurisdiction at law of action for maritime tort.**

Under Judicial Code, § 256, subd. 3 (Comp. St. § 1233, subd. 3), giving to the District Courts exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it," a District Court has jurisdiction on its law side of an action for a maritime tort, where the jurisdictional requisites of citizenship and amount are present, the liability and damages to be measured by the rules applicable to admiralty cases.

Woolley, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by Carl A. Berg against the Philadelphia & Reading Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 266 Fed. 591.

William Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Silas B. Axtell, of New York City (Carl G. Kirsch, of Philadelphia, Pa., of counsel), for defendant in error.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 256 U. S. —. 42 Sup. Ct. 50, 65 L. Ed. —.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This suit was brought by Carl A. Berg, plaintiff below, a seaman on the barge Wiconisco, owned and operated by the Philadelphia & Reading Railway Company, to recover in a common-law action damages for injuries received by him. The barge was lying in New York Harbor. She had a donkey engine below her decks at the bow, over which was a steam winch being operated at the time of the accident to pull another barge alongside of her on the starboard side. The rope leading from the other barge came in at the starboard chock of the Wiconisco and passed through a 14-inch snatch-block to the starboard niggerhead around which it was wound. This snatchblock was of proper size and hooked in an eyebolt attached to the deck 3 feet 10 inches from the starboard drum. The top of the eyebolt, when standing straight up, was about 7½ inches high above the deck. In that position the hook of the block could easily enter the eye, but the eyebolt was bent so far forward that only the end of the hook of the block could enter the eyebolt. This caused a great strain on the hook, the tendency of which was to straighten it out and break it, and this is what happened when a heavy strain came upon it. When the hook broke, something, presumably the block, struck plaintiff's leg, producing a compound fracture, "crushing and pulverizing both bones for a distance of about 3 inches, the approximate thickness of the block." The cause was tried to a jury, which returned a verdict for the plaintiff, and the defendant sued out a writ of error, on which he is before this court.

The several assignments of error raise the following questions:

[1] 1. The plaintiff failed to prove the cause of action alleged in his statement.

It is a fundamental principle of universal application, both in law and equity, that the proofs must correspond with the allegations. The purpose of the rule is that the opposite party may be fairly apprised of the specific nature of the questions involved in the issue, so that he will not be misled and be surprised at the trial. Jones v. Morehead, 68 U. S. (1 Wall.) 155, 165, 17 L. Ed. 662; Nash v. Towne, 72 U. S. (5 Wall.) 689, 698, 18 L. Ed. 527. Did the statement in this case comply with that requirement? The plaintiff alleged in the "sixth" paragraph of the statement that his injuries were received as a result of the negligence of the defendant—

"in failing to provide a block and tackle and the attachments and fittings thereof for use on the donkey engine of a sufficient size, adequate strength and quality for the uses and purposes to which it was necessarily put, and in that no suitable tackle was provided by the said defendant, its agents, servants, and employees, for the carrying on of the work required of this plaintiff on board the said barge."

The specific defect in the barge or its equipment which, the evidence tends to show, caused the injury complained of, was an eyebolt, which was so bent over that the hook of the block could not enter it, so as to be seated and rest in its normal position. The end only of the hook could enter the eye, and as a consequence when power was applied an

unusual leverage and strain was exerted upon the neck or curve of the hook. The defendant contends that the allegations in the statement charging negligence were not sufficiently definite to apprise it of what it had to meet, and accordingly it moved for a nonsuit on this ground, among others. The court overruled the motion, and on motion for a new trial said:

"I think the eyebolt, without which the block and tackle used on the donkey engine could not have been employed in hauling the other barge, is included within the 'attachments and fittings,' and that the evidence that the eyebolt was so bent as not to permit the seating of the hook to its position was sufficiently set out in the allegation of lack of sufficient size and quality."

If the eyebolt is included within the "attachments and fittings," the question arises: Of what are they "attachments and fittings"? What is the antecedent of the word "thereof"? The defendant says that "the allegation in the statement of claim would seem to refer to the failure to furnish proper appliance in the form of a hook, block, and tackle"; that is, the defendant is charged with failing to provide proper "attachments and fittings" for the block and tackle. The plaintiff contends that the eyebolt is part of the ship, but is included in the equipment that goes with the winch. Grammatically the antecedent of the word "thereof" is "block and tackle." In other words, plaintiff charges that defendant failed to provide a block and tackle having attachments and fittings for use on the donkey engine, etc. Neither the block and tackle nor the attachments, supposed to include the eyebolt, as we understand it, were used literally "on the donkey engine," but in connection with it "for the uses and purposes to which it was necessarily put."

If this allegation of negligence stood alone, it must be admitted that it is vague and indefinite. But there is a second charge of negligence, which is separate and distinct from the first and additional to it. It is separated from the first by a comma and the conjunction "and," which is followed by the phrase "in that," whose function is to designate the particular additional negligence charged, which is that "no suitable tackle was provided by the said defendant * * * for carrying on of the work required of this plaintiff on board the said barge." "Tackle" here is broader than as used in the first allegation, and includes any and all of the equipment or outfit used by the plaintiff in carrying on his work at the time of the accident on the barge. "Tackle" is defined by the Standard Dictionary as:

"A mechanism of ropes, pulley blocks, hooks, etc., for raising and lowering heavy weights"; "the instruments collectively for carrying on any specific work or undertaking; gear; tools; outfit; equipment."

It is defined by the Century Dictionary and Cyclopedia as:

"A mechanism or apparatus in general for applying the power of purchase in manipulation, shifting, raising or lowering objects or materials; the windlass and its appurtenances, as used for hoisting ore from small depths; equipment or gear in general; a combination of appliances."

Hawkins' Mechanical Dictionary defines "tackle" as:

"The instruments, taken as a whole, for carrying on a work; tools; outfit; equipment."

"Tackle," as used here, included the eyebolt as a part of the equipment used by defendant in carrying on the work of drawing the other barge alongside the Wiconisco at the time of the injury to the plaintiff, and as the defendant had in its possession the hook, eyebolt, and barge, and in its employ the associates of the plaintiff engaged in the work with him, and thus doubtless knew or had the means of knowing the nature of the accident it was called upon to defend, we feel that, while the statement as such was not a model to be followed and was poor pleading, yet the defendant knew what it had to meet and was not surprised at the trial, and, if it was not, the learned trial judge properly refused to direct a verdict. Nash v. Towne, supra; Washington, etc., R. Co. v. Hickey, 166 U. S. 521, 17 Sup. Ct. 661, 41 L. Ed. 1101. Furthermore, if the defendant did not know what particular piece or part of the tackle, then and there used in the work, was meant, it could have ascertained it by a bill of particulars.

[2] 2. The plaintiff was guilty of contributory negligence and could not recover.

The questions of whether or not the eyebolt was defective, and, if it was, whether or not that defect caused the hook to break, which resulted in the plaintiff's injury, as well as the question of contributory negligence of the plaintiff, were submitted to the jury. The defendant contends that there was no testimony from which the jury could draw the conclusion that the condition of the eyebolt could have caused the hook to break, and that even if the eyebolt was bent over, so that only the end of the hook could enter it, and the hook was not seated in its normal position in the eye, the testimony does not justify the conclusion that the hook would have broken more easily in that position than if it had entered the eye fully and properly to its normal position.

This contention does not take into consideration the "real evidence" in the case. The jury had before it the hook, and the testimony as to how it was fastened in the eyebolt, and could readily draw its own conclusion. In addition to the usual methods of establishing facts by direct or positive evidence and circumstantial evidence, there is that of "self-perception or self-observation." We have three classes of evidence: (1) Direct or testimonial evidence; (2) indirect or circumstantial evidence; (3) autoptic preference, or real evidence. Greenleaf on Evidence (16th Ed.) vol. 1, § 13a; Wigmore on Evidence, § 1150 et seq.

"In a great measure proof of this means (autoptic preference or real evidence) may be more potent than by any other evidence." The Modern Law of Evidence by Chamberlayne, § 3588.

"Inspection is like admission, in that, while not testimony, it is an instrument for dispensing with testimony, and, in a doubtful case, the class of testimony it dispenses with might be a controlling circumstance." Gaunt v. State, 50 N. J. Law, 490, 495, 14 Atl. 600, 603.

The jury had the hook and eyebolt before it, and, being composed of men of common sense and experience, could determine for itself whether or not it was broken because it could not fully and properly enter the eye. It was thus not wholly dependent upon what was *said* about the hook and eyebolt.

[3] 3. The court was without jurisdiction to try this case on its law side.

Plaintiff here is seeking to enforce a maritime right by means of a common-law remedy in the United States District Court. Can a United States District Court take jurisdiction on its law side of a cause of action within its admiralty jurisdiction? This principle of law arises out of the Constitution and the laws of the United States. Artcle 3 of the Constitution of the United States provides in section 1 that—

"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."

It provides in section 2 that—

"The judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction."

Article 1, § 8, subd. 18, confers upon Congress the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof."

In furtherance of these constitutional powers, the Congress, by section 9 of the Judiciary Act of 1789 (1 Stat. 76, 77), and continued by section 24, subd. 3, and section 256, subd. 3, of the Judicial Code (Comp. St. §§ 991, 1233), gave the District Courts of the United States exclusive original jurisdiction "of all civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common-law remedy where the common law is competent to give it." In giving exclusive original cognizance of all civil causes of admiralty, the Congress at the same time and by the same law saved the right of a common-law remedy, where the common law is competent to give it. Whether the action is tried at common law or in admiralty, the liability of the defendant is measured by the maritime law and not by the common law. Southern Pacific Railroad v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Chelentis v. Luckenback S. S. Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145.

Whether a suitor has a common-law remedy on the law side of the District Court in an admiralty action depends upon the meaning of the words "common-law remedy." The defendant contends that, as there is no common-law jurisdiction in the federal District Court, that court is not competent to give a common-law remedy, and therefore the only remedy in admiralty cognizable by the District Court is on its admiralty side. While it is true that all remedies of the District Court are statutory, it is equally true that its original jurisdiction extends to "all suits of a civil nature, at common law or in equity," brought by certain parties and for certain amounts, showing that, while its jurisdiction is statutory, it extends by express provision of statute to matters at common law and in equity. While its jurisdiction embraces causes of admiralty, there is saved to suitors the right of a common-law

remedy, where the common law is competent to give it. The plaintiff is seeking to enforce his maritime right, not in a common-law court, but in a court without common-law jurisdiction, by means of a common-law remedy. The common-law remedy which the District Court affords is that of trial by jury, and such a remedy is saved to him by the clause conferring on the District Court exclusive admiralty jurisdiction. Section 256, Judicial Code. In the Chelentis Case, supra, the Supreme Court said, in drawing the distinction between rights and damages:

"Plainly, we think, under the saving clause, a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law."

A remedy recognized at common law, competent to be given by the District Court on its law side, is an action triable to a jury for damages measured by the rules of admiralty.

The cause of action before us arising in admiralty was a tort, and of such torts the District Court on its admiralty side has jurisdiction. With reference to such torts, the law saves to suitors the right of a common-law remedy when the common law is competent to give it. The common-law remedy in tort is saved to suitors in the District Court when the jurisdictional requisites of citizenship and amount are present. They are present in this case, and the law allows the plaintiff to elect which remedy he will pursue, and he has elected to pursue his common-law remedy for damages in tort, measured by the rules applicable to admiralty cases. The Supreme Court of the United States has not passed upon this specific question, but the right to try on the law side of the District Court a cause arising in admiralty has been recognized in the Circuit Court of Appeals for the Second Circuit. Erickson v. Roebling's Sons Co., 261 Fed. 986; Hanrahan v. Pacific Transport Co., 262 Fed. 951; Storgard v. France & Canada S. S. Corporation, 263 Fed. 545.

We do not find error in this case, and therefore the judgment of the District Court will be affirmed.

WOOLLEY, Circuit Judge (dissenting). Being impressed with the office of pleadings in actions at law, I am constrained to dissent on the ground that (as I read the record) the plaintiff declared on one cause of action, and, over objections seasonably made, was allowed to recover on another cause of action.

I concur on the jurisdictional question.