STAMP v. UNION STEVEDORING CORPORATION, with other cases.

(District Court, E. D. Pennsylvania. November 28, 1925.)

No. 11626.

1. **Courts** ⚛⚏300—Where suitor elects to sue at common law instead of in admiralty, case, for jurisdictional purposes, will be treated as other common-law actions, including requirement of diversity of citizenship.

Where suitor elects to sue at common law instead of in admiralty, case, for jurisdictional purposes, will be treated as are other common-law actions, including requirement of diversity of citizenship to give federal court jurisdiction.

2. **Action** ⚛⚏32—Under Pennsylvania statutes, distinction between actions in contract and tort, for purpose of determining treatment of such causes, remains.

Under Practice Act Pa. May 14, 1915 (P. L. 483; Pa. St. 1920, §§ 17181–17204), abolishing formal distinctions between declarations in actions ex contractu and ex delicto, distinction between such actions for purpose of determining treatment of such causes, as well as between evidentiary and ultimate facts, and facts and conclusions of law, remains.

**3. Action ⬅➡27(1)—Distinction between causes of action in contract and in tort stated.**

Cause of action in contract arises from obligation created by agreement, while cause of action in tort arises from obligation created by relation.

**4. Action ⬅➡28—Injured party may waive tort and sue on implied contract.**

Under certain conditions, injured party may waive tort and sue on implied contract, where duty can be implied without abolishing distinction between tort and violated contract.

**5. Action ⬅➡27(1)—Statements of claim for injuries held not demurrable, because claim involved tort instead of contract liability as alleged therein.**

Statements of claim for injuries to stevedores engaged in unloading vessels *held* not demurrable merely because claims involved tort liability instead of contract liability as alleged therein.

**6. Admiralty ⬅➡10, 18—As respects jurisdiction, distinction between "maritime contracts" and "maritime torts" stated.**

As respects admiralty jurisdiction, distinction between maritime contracts and maritime torts is that, whether contract is maritime is determined by its subject-matter, but same question in respect to a tort is determined by place of injury.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Maritime Tort; First and Second Series, Maritime Contract.]

**7. Master and servant ⬅➡35(—Pennsylvania Workmen's Compensation Act, where applicable, provides exclusive remedy, and must be read into statement of claim.**

Effect of Workmen's Compensation Act, Pa. (Pa. St. 1920, § 21916 et seq.), where applicable, is to provide exclusive mode of awarding compensation for personal injuries, and must be read into every statement of claim.

**8. Admiralty ⬅➡1—States cannot regulate means of redress for breach of maritime contracts, but may do so in tort actions unaffected by maritime law.**

States cannot regulate means of redress for breach of maritime contracts, but may do so in tort actions unaffected by maritime law.

**9. Pleading ⬅➡192(1)—State Workmen's Compensation Act held to present trial questions and not questions to be determined in passing on sufficiency of pleading.**

In actions at law for injuries to stevedores while unloading vessels, *held* that questions arising under Workmen's Compensation Act, Pa. (Pa. St. 1920, § 21916 et seq.), presented trial questions, and could not be ruled on as pleading questions on statutory demurrers.

At law. Action by Adam Stamp against the Union Stevedoring Corporation, heard with other similar actions. On defendant's statutory demurrers. Certain causes dismissed for want of jurisdiction, and demurrers overruled in others.

Edward M. Rand, Harry H. Johns, and Rand & Johns, all of Philadelphia, Pa., for plaintiff.

C. Brewster Rhoads and Robert T. McCracken, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. These cases, of which there is a number, are all of kindred nature and may be determined in one opinion, although there is in some respects a differentiation to be made among them. The discussion fairly bristles with points, some of which partake of the flavor of hornbooks, and, although of more or less academic interest, are of doubtful practical value. Due deference, however, to the industry and spirit of thoroughgoing investigation, as well as ability displayed by counsel, demands a consideration of the questions which have been raised. The first is one of jurisdiction which is of paramount importance.

We may get a starting point for the discussion by an outline statement of the general fact situation and by premising a few propositions of fact and law which are not in dispute. The plaintiffs were all in the employ of the defendant, doing service in stevedoring work, which was performed, sometimes on docks, and sometimes on the decks and in the holds of vessels whose cargoes were being discharged. It is thus truly amphibious.

The claims made are for compensation for injuries received in such service. There is agreement that the contracts of employment were maritime in their nature, and that under section 2 of article 3 of the Constitution cases growing thereout are cognizable in a court of the United States sitting as a court of admiralty. There is likewise agreement that, under the provisions of the Judiciary Act, a suitor has the right (notwithstanding his case may otherwise be cognizable in admiralty as a maritime cause) to pursue at common law such remedies as the common law affords, and that the common law is "competent to give" redress for the injury of which complaint is made in these cases. Each of these plaintiffs has elected to pursue his common-law remedy and has brought his action accordingly, but has likewise brought it in a court of the United States. Out of this election the question of jurisdiction has arisen.

To recapitulate the pertinent propositions not in dispute, if the plaintiffs had appealed for redress to this court as a court of admiralty and maritime jurisdiction, the question now before us would not have been presented; if the cause had been wholly disassociated

from all features of a maritime nature, then just as clearly this court would have no jurisdictional power to entertain it, unless there was the further fact of diversity of citizenship.

[1] Waiving for the moment the distinction between contracts and torts, and ignoring for the present the effect of this distinction (which will hereafter be discussed), the question becomes whether this court, sitting for the time being as a common-law court in a common-law action, and as such having jurisdiction only because of diversity of citizenship, has none the less general jurisdiction, if the cause, although brought as one at common law, might (had the injured party so elected) been brought as a proceeding in admiralty for a cause maritime.

We do not regard the question to be an open one and content ourselves with the statement of the conclusion that, when a suitor elects to pursue his common-law remedy, he takes the cause out of the class, to which it might otherwise belong, of causes maritime, and it must be treated for jurisdictional purposes as other common-law actions are treated. This question of jurisdiction, however, does not arise in those of the cases in which there are the usual jurisdictional averments, including that of diversity of citizenship.

2. Respecting these latter cases, other questions are raised. They turn upon the general question of the propriety of the special common-law remedy which has been invoked. Common-law remedies are of great variety and diversity. Procedural law may be roughly classified into provisions for bringing a cause into court by subjecting a defendant to its jurisdiction as by writs of summons and other process; provision for bringing the subject-matter of the litigation before the court through the pleadings; provision for the entry of summary judgments by default and otherwise; provision for the trial of issues by jury process and trial regulations; provision for judgments with appellate review; and provisions for carrying the judgment into execution through execution process. In Pennsylvania, the distinction between different forms of writs soon fell into innocuous desuetude. Whether the proper form of writ to bring a defendant into court had issued could be learned only through oyer of the writ, and such oyer was early abolished in this state. A consequence was that the courts could not know whether the proper form of writ had been employed, because there was no way in which they could judicially learn what the form of the writ was. A further consequence, for the exist-

ence of which we have the high authority of Judge Sharswood, is that a plaintiff might have issued a form of writ appropriate to the assertion of one cause of action and filed a declaration setting forth a wholly different cause of action. The distinctions between forms of writs (assuming the defendant was in court so as to give the court jurisdiction of the parties and ignoring statutory enactments) became altogether unimportant. The distinction in form between declarations (for instance in causes of action arising ex contractu and ex delicto) still remained. The Legislature has, however, dealt with this subject in the Practice Act of 1915 (P. L. 483; Pa. St. 1920, §§ 17181–17204) and kindred statutes.

[2-5] The Practice Act avows its purpose to be to prescribe the procedure which must be followed in asserting at law certain causes of actions which include those now before us. It clearly recognizes the distinction between, in the phraseology of the act, "actions of assumpsit" and "actions of trespass," but just as clearly abolishes all distinctions of form between the declaration or statement of these different causes of action. This must be so, because, no matter whether the case be one of contract or of tort, the statement of what it is shall be in precisely the same form. The pleadings are good if in this form, and are permitted to be in no other. The act, after dictating what shall be stated, further prescribes what shall not be stated. This means that, so far as respects form, there is no difference between a statement of claim in assumpsit and one in trespass. The distinction, however, as before stated, remains, and is recognized in the act as well as the distinction between what are commonly called evidentiary facts and ultimate facts, and that between facts and inferences or conclusions of law. These distinctions remain because they are not formal or merely conventional but are logical and not merely conducive but necessary to clear thinking. They are not only recognized to exist, but consequences of importance attach to them. The difference in the mode of treatment of causes of actions ex contractu and ex delicto is determined now, not by the forms of writs or declarations, but by the nature of the cases out of which they arise. The basic difference is that between contracts and duties out of the existence of which obligations arise. It is a general truth that out of every contract a duty arises because every promise ought to be kept. It is not true, however, that a contract springs from every duty and becomes identified with it because the duty may re-

main in direct conflict with an express contract. It is not an answer to say that in such cases the contract is an unlawful one and therefore void. The difference is the difference between the obligation of a duty which arises out of a relation and that of a contract which springs wholly from the contract. This difference is as marked as that between day and night. As, however, day gradually fades into night, so that we have a twilight zone which partakes of both, so there is sometimes a like overlapping of these obligations. We have, because of this, the expressions "sounding in tort" and "sounding in contract," and it was always permissible in such cases for a plaintiff to, as it is called "waive the tort" (or the contract) and to sue in an "action of assumpsit" (or in an "action of trespass"). This was always held to be allowable in some lines of cases. The whole doctrine of implied contracts really belongs to the fictions of the law. Under certain conditions, the law will raise an implied promise so as to permit an action of assumpsit to be brought, but a promise in every case of duty cannot be implied and identified with the duty without abolishing the distinction between torts and violated contracts altogether. There is not merely a distinction but a real difference. It may be admitted, however, that an analysis of the fact statements of these statements of claim discloses that the plaintiff's claim in each case is founded upon the averment of a tort committed and not upon a violated contract without opening the statements to the attack of a statutory demurrer merely because the plaintiffs have given a misnomer to the statements. We are of opinion that each statement discloses a cause of action, notwithstanding the misnomer.

[6] 3. There is a third question raised, of which we have already disposed, which may deserve a further word of comment. Upon the assumption that the admiralty jurisdiction of the United States courts in maritime causes would confer jurisdiction upon this court to entertain an action for such a cause when asserted as a common-law action, in the absence of diversity of citizenship, it became of importance to establish this maritime jurisdiction. As in some of the cases there is no diversity of citizenship, so also in some or all the injuries for which the actions are brought were sustained on the land. A distinction between maritime contracts and maritime torts is that, whether a contract is or is not maritime is determined by its subject-matter; the same question in respect to a tort is determined by the locus in quo of the injury.

Hence it became of importance to counsel for plaintiffs to maintain that the plaintiffs were seeking to recover damages for the breach of a contract and not for the commission of a tort.

The conclusion reached, that the jurisdiction of this court in common-law actions depends upon the citizenship of the parties, irrespective of the nature of the cause of action, renders this question of no importance.

[7-9] 4. A fourth question is that of the effect of the Pennsylvania Workmen's Compensation Act (Pa. St. 1920, § 21916 et seq.). There can be no doubt that the effect of this act, when it applies, is to provide an exclusive substitute mode of awarding compensation for personal injuries. The subject dealt with by the act is a complex one, and its treatment necessarily so. Primarily the act in its legal benefits is defensive. Its provisions, however, being part of the law of the land, must be read into every statement of claim. The point to be ruled is whether the questions which arise under it are to be met at the threshold as questions of pleading or when the fact situation is developed as trial questions. If the act be set up as a defensive answer, it may be countered by a reply. To treat it as a question of pleading is to require a plaintiff to anticipate its introduction as a defense and to require the replying averments to be set forth in advance. This question doubtless supplies the motive for the strategical and tactical moves made in this cause. If the cause of action arises out of a maritime contract, the state cannot dictate the measure of redress. If the cause arises out of a tort, unaffected by the maritime law, the state may so dictate; hence the advantage to the plaintiff of declaring upon a contract. However the benefits may flow, all now to be determined is whether the effect of the Compensation Act can be now appraised or whether its consideration should be reserved as a trial question. Notwithstanding the ingenuity displayed in phrasing the statement of claim to have it otherwise appear, it could be found to set forth a cause of action for damages for a tort and that the injury occurred on land, and hence was not a maritime tort. From these findings a strong probability, reaching nearly a practical certainty, that the compensation law had application, would appear. This is confirmed by what is almost an admission, that, if the cases are in tort, plaintiffs' only remedy is through the Compensation Board. We are unable at this time, however, to find a legal certainty that the act does apply. In any case, as for an ordinary tort, if the act is

set up as a defense, a plaintiff may be able to show that he is without its provisions. This means that the question under the pleadings before us cannot be ruled as a question of pleading.

The conclusions reached are in accord with the weight of the authority of the decided cases to which we have been referred.

(1) Upon the question of jurisdiction: Steamship v. Chase, 83 U. S. (16 Wall.) 522, 21 L. Ed. 369; Keithley v. Steamship (D. C.) 232 F. 255; Railroad v. Berg (C. C. A.) 274 F. 534; Id. (D. C.) 266 F. 591; Ross v. Steamship (D. C.) 272 F. 539.

(2) The distinction between actions on contracts and for torts: Corry v. Railroad, 45 A. 341, 194 Pa. 516; Parry v. Bank, 113 A. 847, 270 Pa. 556; Jeffery v. Labor, 127 A. 462, 282 Pa. 123; Hoover v. Corbin, 82 Pa. Super. Ct. 167.

(3) Admiralty jurisdiction in cases of torts and contracts: State v. Nordenholt, 42 S. Ct. 473, 259 U. S. 271, 66 L. Ed. 933, 25 A. L. R. 1013; Netherlands v. Gallagher (C. C. A.) 282 F. 173; Grant v. Rohde, 42 S. Ct. 157, 257 U. S. 469, 66 L. Ed. 321, 25 A. L. R. 1008.

(4) Waiver of the tort: Pollard v. Railroad, 101 U. S. 223, 25 L. Ed. 840; In re Queen (D. C.) 61 F. 213; Bigby v. U. S., 23 S. Ct. 468, 188 U. S. 408, 47 L. Ed. 519.

(5) The Compensation Act: Industrial Comm. v. Nordenholt, 42 S. Ct. 473, 259 U. S. 263, 66 L. Ed. 933, 25 A. L. R. 1013; Southern v. Jensen, 37 S. Ct. 524, 244 U. S. 205, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900.

Formal orders may be submitted (1) Dismissing for want of jurisdiction the cases in which there is no averment of diversity of citizenship; (2) refusing to decide in favor of the defendant in the remaining cases on the points of law raised, with leave to defendant to answer over in accordance with the Practice Act of 1915.