## NOLAN v. GENERAL SEAFOODS CORPORATION.

## GENERAL SEAFOODS CORPORATION v. NOLAN.

### Nos. 3572, 3573.

Circuit Court of Appeals, First Circuit.
June 4, 1940.

Harry Kisloff, of Boston, Mass., for Nolan.

Joseph F. Dolan, of Boston, Mass. (Charles A. McCarron, of Boston, Mass., on the brief), for General Seafoods Corporation.

Before MAGRUDER, and MAHONEY, Circuit Judges, and McLELLAN, District Judge.

MAHONEY, Circuit Judge.

These are appeals from judgments of the United States District Court for the District of Massachusetts.

The plaintiff, a resident of Boston, Massachusetts, a fisherman, brought this action at law under the provisions of Section

33 of the Seamen's Act of June 5, 1920, 46 U.S.C.A. § 688, to recover in the first count for personal injuries sustained by him through the alleged negligence of the defendant, a Massachusetts corporation, while he was aboard the fishing trawler "Dartmouth", and in the second count for maintenance and cure.

In the first count it was alleged that the injuries complained of were received while the plaintiff was a member of the crew, and were caused through no fault of his own; but through the fault of the defendant in failing to provide and maintain reasonably safe and proper appliances; to make reasonable and periodic inspections of said appliances; through the negligence of fellow servants, negligence of the person in charge of fishing at the time of said injuries, and negligence in other respects.

The defendant in its answer admitted that it was at the time of said injuries the owner and operator of the "Dartmouth", and that the plaintiff was a member of its crew; that the plaintiff received the injuries complained of while he was aboard the "Dartmouth" on the high seas; but denied that said plaintiff was in the exercise of due care, and alleged that the plaintiff was contributorily negligent and that he assumed the risk, and denied that it was negligent in any of the respects alleged by the plaintiff in his complaint.

At the conclusion of the testimony for the plaintiff, the trial judge directed a verdict for the defendant on the first count and submitted the case to the jury on the second count. The jury returned a verdict for the plaintiff on the second count, and, after judgments had been entered, the plaintiff appealed from the judgment on the first count, and the defendant appealed from the judgment on the second count.

The facts are as follows: The plaintiff, a fisherman, was a member of the crew of the "Dartmouth", which was a fishing trawler out of the port of Boston, engaged in fishing on the high seas. He joined the "Dartmouth" the day after Christmas, 1937. On or about November 13, 1938, early in the morning, he, with other members of the crew, was called to draw in the net. After they got enough slack in, and the snodder around the net, he was injured while assisting the mate in shifting the snodder. The snodder is a rope used for hauling in the net by power. There was no evidence as to the amount of fish in the net at the time of the accident, though there was testimony that at times there might be 25,000 or 30,000 pounds in the net.

Sometimes it is necessary to shift the snodder to drive the fish into the bottom of the net, and on this occasion a seiseline rope was used as a preventive to hold the net in position while the snodder was being shifted. This preventive rope was made fast to a fairlead on the deck of the trawler, several turns taken around the net, and the other end held by another fisherman.

At the time of the accident the sea was rough and the boat was rolling considerably. It had been like that for two days. The plaintiff was standing close to the rail on the port side facing the sea. The seiseline rope parted between the fairlead and the net, about two or three minutes after the snodder rope was slackened. The net went out and caught the plaintiff and pulled him over the rail, and as a result he was injured. The preventive rope or seiseline rope was described by witnesses as a white, brand new rope, not manila. It had never been used before for any purpose. It just "ravelled out" where it parted. Witnesses agreed that there was no particular type of rope for this purpose, but there was substantial testimony that the practice on other similar boats was to use the same kind and size rope as the snodder to hold the net while the snodder was shifted. The snodder rope was approximately two or three inches in circumference, and there is evidence that the seiseline rope was hardly half this size.

There was no evidence that the seiseline rope was ever tested for the purpose used on this occasion, nor was there any evidence that it was ever used for said purpose on the "Dartmouth", nor that it was manufactured for such use. It showed no signs of any defect, latent or patent. Seiseline rope is usually used for winding around the foot rope, which is made of wire and drags on the bottom.

The trial judge ruled that the burden of proving negligence on the first count was on the plaintiff, and that he had failed to sustain this burden, and directed a verdict for the defendant.

■ No question was raised in this case as to the right of the plaintiff under the general maritime law to recover indemnity for injuries resulting from failure of the shipowner to furnish a seaworthy ship, in-

cluding safe and suitable appliances. See Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 42 S.Ct. 475, 66 L.Ed. 927; Engel v. Davenport, 271 U.S. 33, 36, 46 S.Ct. 410, 70 L.Ed. 813; Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368; The H. A. Scandrett, 2 Cir., 87 F.2d 708; Sabine Towing Co., Inc., v. Brennan, 5 Cir., 72 F.2d 490, 494; The Cricket, 9 Cir., 71 F.2d 61, 63; Burton v. Greig, 5 Cir., 271 F. 271. Cf. Plamals · v. S. S. Pinar Del Rio, 277 U.S. 151, 154, 155, 48 S.Ct. 457, 72 L.Ed. 827; The James E. Ferris, D.C., 1 F.Supp. 1018; John A. Roebling's Sons Co. v. Erickson, 2 Cir., 261 F. 986, 987, 988. Whether such a suit can be maintained on the law side of a federal district court in the absence of diversity of citizenship, instead of by libel in admiralty, need not be determined. Compare 28 U.S.C. § 41(1) (a), 28 U.S.C.A. § 41(1) (a), and Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 160, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145, with Philadelphia & R. R. Co. v. Berg, 3 Cir., 274 F. 534, 538, 539; Stamp v. Union Stevedoring Corp., D.C., 11 F.2d 172, 174. In the case at bar the plaintiff elected to sue under the Jones Act for negligence (see Pacific S. S. Co. v. Peterson, 278 U.S. 130, 138, 49 S.Ct. 75, 73 L.Ed. 220; Skolar v. Lehigh Valley R. R. Co., 2 Cir., 60 F.2d 893, 894), with an added count for maintenance and cure on account of injuries received in the service of the ship, which count may properly be joined with one under the Jones Act. Stevens v. R. O'Brien Co., 1 Cir., 62 F.2d 632, 633. The case was tried on this basis below and argued on appeal on the same basis.

█ The plaintiff to recover for personal injuries under the provisions of the Jones Act must first establish that there existed between him and the defendant at the time of the injury the relationship of employee and employer. The Norland, 9 Cir., 101 F.2d 967, 973; Cromwell v. Slaney, 1 Cir., 65 F.2d 940, 941. The defendant argues that the plaintiff has not done this. However, the plaintiff testified that he joined the "Dartmouth" the day after Christmas, 1937, and worked on it as a fisherman and member of the crew for practically a year before the date of the accident. Further, the defendant admits in its answer that the plaintiff was a member of the crew, and at the time of the accident it was the owner and operator of the "Dartmouth". We think it is clear that

there is evidence from which the jury could properly have found that the plaintiff was an employee of the defendant at the time of the accident.

█ Was the trial judge in error in directing a verdict for the defendant on the first count? The testimony shows that the usual practice on boats similar to the "Dartmouth" was to use as a preventive rope when shifting the snodder a rope of the same size as the snodder. This practice was not followed in this case. A rope of about one-half the size of the snodder was used as a preventive. It was new and had not been tested or used before for this purpose. The seiseline rope was used in the manner usually employed in shifting the snodder and there was no unusual strain at the time that it parted between the net and the fairlead. The fact that it broke is evidence of its insufficiency and this is evidence of negligence. The Atlantic City, D.C., 211 F. 554; American Sugar Refining Co. v. Nassif, 1 Cir., 45 F.2d 321, 324; Neptune Steam Nav. Co. v. Borkmann, 4 Cir., 118 F. 420, 421.

█ We are convinced that the injury was received because the seiseline rope was insufficient for the load which might be reasonably expected to affect it and which did cause it to fray out. The Drumelton, D.C., 158 F. 454, 455. There was no evidence that it had been purchased or tested for this use. In The Phoenix, D.C., 34 F. 760, 762, the court said:

"An examination may have developed that it was not safe. No examination was had. Thus there was a want of due care, which is negligence, and for this the ship is liable."

The seiseline rope was in the exclusive control of the defendant, its servants and agent. It had been furnished by the mate and made fast by him to the fairlead. It was inadequate for the use to which it was put, and the accident happened without fault on the part of the plaintiff.

The court said in San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 32 S.Ct. 399, 401, 56 L.Ed. 680, in considering the doctrine of res ispa loquitur, that " * * * when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control

uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from defendant's want of care."

We think that a jury could properly draw the conclusion that the mate in making the selection of this rope was careless and from his experience in such matters should have known better.

As to the second count, the defendant urges that the damages of $630 are excessive as a matter of law, and that the trial judge was in error in denying the motion for a new trial. But the denial of a motion for a new trial is discretionary with the trial judge, and we find here no abuse of discretion.

The judgment of the District Court as to the first count is reversed and sustained as to the second, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff recovers costs of appeal.