Scileppi, J.
This is an action to recover for personal injuries. In the early morning hours of Saturday, March 17,1962 the Tugboat Dalzellable[1] was moored in its usual place (alongside several other tugs) to a barge. This barge is secured to a dock which Dalzell Maintenance Co., Inc. (hereinafter referred to as Maintenance) occupies as lessee[1]
[2] and the dock borders on a boat yard on which several buildings and businesses are located.
Since there was usually no work to be done aboard the Dalzellable on weekends, Dalzell Towing Co. (hereinafter referred to as Towing) developed the practice of mooring the tug at the afore-mentioned location and the crew would go off duty and leave the. boat for the weekend. The members of the crew would customarily call Towing’s dispatcher on Sunday evening and the tug would usually sail on Monday morning.
Appellant (now an octogenarian) had been employed by Towing aboard the .Dalzellable as an engineer for an average of 40 weeks a year for several years immediately preceding the acci *459 dent. After the tug had been securely docked and her engines shut down, appellant left the boat, crossed the barge and proceeded to walk through the boat yard as he and the other crewmen had done for as long as the tug had been docked at the afore-mentioned location. He was injured when he fell into a [1] ‘ ramp or pit ’ ’ located in the boat yard. At the time of the accident the only custodian on the property was a watchman, employed by Towing to light up the area so that the personnel could safely leave the yard, and it appears that on the night in question the light was not on.
Appellant has alleged two causes of action against his employer, Towing, and Maintenance, one predicated on common-law negligence and the other under the J ones Act (TJ. Si Code, tit. 46, § 688 et seq.) and thus far there have been two jury trials in the matter. At the first trial both causes of action were dismissed at the close of appellant’s case, but the Appellate Division on appeal reversed and ordered a new trial because it felt substantial questions of fact were presented which ought to have been resolved by a jury (25 A D 2d 683). The second trial court submitted the common-law negligence cause of action to the jury, but dismissed the Jones Act cause on the ground that appellant was not a seaman within the meaning of the Act. The jury, after requesting further instructions on the law of contributory negligence, rendered a verdict in favor of respondents. Appellant has prosecuted his appeal solely on the issue of the propriety of the dismissal of the Jones Act cause of action and the Appellate Division has unanimously affirmed without opinion (31 A D 2d 599).
Thus, the sole question for our determination is whether the trial court improperly dismissed the Jones Act cause of action.
At the outset it must be stressed that the resolution of this question is a matter of Federal and not New York law (Garrett v. Moore-McCormack Co., 317 U. S. 239; Westerberg v. Tide Water Associated Oil Co., 304 N. Y. 545) and for that reason, we are “bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected ” (Garrett, supra, at p. 245).
The requisites for a cause of action under the Jones Act are set forth in the statute itself: “ Any seaman who shall suffer personal injury in the course of his employment may, at his election, *460 maintain an action for damages at law, with the right of trial by jury ” (U. S. Code, tit. 46, § 688).
Thus a plaintiff may maintain a cause of action against his employer under this act (1) if he is a seaman; (2) his injury was suffered in the course of his employment; and (3) if he can establish negligence.[3]
As previously indicated, the dismissal by the trial court was based on the belief that appellant was not a seaman and consequently ineligible to utilize the Jones Act. While the Jones Act does not give us the meaning of the word “ seaman ”, Federal case law establishes three essential criteria: ‘ ‘ First, the vessel on which the claimant is employed must be in navigation. Second, there must be a more or less permanent connection with the vessel, and third, claimant must be aboard primarily to aid in navigation ” (Bodden v. Coordinated Carribbean Transp., 369 F. 2d 273, 274). Although the Dalsellable was tied to a dock, it is clear that a vessel can be in navigation, although not “ plying in navigable waters ” at the moment of injury (McKie v. Diamond Mar. Co., 204 F. 2d 132, 134; see Senko v. LaCrosse Dredging Corp., 352 U. S. 370; Butler v. Whiteman, 356 U. S. 271). As to the other criteria, it is plain from the record that appellant had a permanent connection with the vessel. He had been employed by Towing for several years and had worked on this same tug for its former owners for over 30 years. Moreover, it is obvious that a maritime engineer is employed ‘1 to aid in navigation ” (see, e.g., Street v. Isthmian Lines, 313 F. 2d 35, cert. den. 375 U. S. 819). Thus, it is our opinion, on the basis of the afore-mentioned authorities, that the trial court erroneously held that appellant was not a seaman. Since he presented sufficient evidence to go to the jury on this issue, the J ones Act cause of action was improperly dismissed (Butler v. Whiteman, supra).
Furthermore, it appears that appellant’s injuries were sustained “ in the course of his employment ”. As stated by the Supreme Court in Braen v. Pfeifer Transp. Co. (361 U. S. 129, 132-133): “We held that a seaman who was injured on the dock while departing from the ship on shore leave was in the *461 service of the vessel and was entitled to recover for maintenance and cure in Aguilar v. Standard Oil Co., 318 U. S. 724. It was there recognized that a seaman is as much in the service of his ship when hoarding it on first reporting for duty, quitting it on being discharged, or going to and from the ship while on shore leave, as he is while on hoard at high sea. Id., at 736-737. We also held that a seaman injured in a dance hall while on shore leave was in the service of his ship in Warren v. United States, 340 U. S. 523, 529 * * * They also supply relevant guides to the meaning of the term ‘ course of employment ’ under the Act since it is the equivalent of the ‘ service of the ship ’ f ormula used in maintenance and cure cases. ’ ’ (Emphasis added.)
Respondents, however, argue that, although appellant’s injuries may have been sustained ‘ in the course of his employment ”, the employer’s liability under the Jones Act ceases at the end of the gangway (relying on Dangovich v. Isthmian Lines, 218 F. Supp. 235, affd. 327 F. 2d 355; Wheeler v. West India S. S. Co., 103 F. Supp. 631, affd. 205 F. 2d 354, cert. den. 346 U. S. 889), and that we should affirm because the injuries in the instant case occurred in the boatyard. We cannot agree with this contention. It seems a bit inconsistent to say on one hand that a seaman is ££ in the course of his employment ” going to and from the ship or even on shore leave and then to say that the employer has no duty beyond the gangway. Dangovich and Wheeler were decided on the question of whether or not the plaintiffs in those actions had proven negligence. Both cases appear to have adopted the rationale that the employer should not be held liable where he was not in control of the locale of the accident. While this may be a sound principle, it does not mean that the employer in the instant case was not in control. The question of control, in view of the conflicting testimony as to the exact whereabouts and function of Towing’s watchman, and the evidence in the record that crewmen customarily used this route of egress, is a question of fact which ought to have been resolved by a jury (see Ferguson v. MooreMcCormack Lines, 352 U. S. 521; Rogers v. Missouri Pacific R. R. Co., 352 U. S. 500), and consequently a new trial is necessary. Here the watchman was employed by Towing and his negligence, if any, would give rise to a recovery against Towing under the Jones Act.
*462 As far as Maintenance is concerned, the jury also found in favor of this defendant on the common-law negligence cause of action. In view of the fact that appellant did not appeal that determination, the question remaining for us is whether a cause of- action exists against Maintenance under the Jones Act. It is well settled that a seaman may only resort to the Jones Act in actions against his employer (see Cosmopolitan Co. v. McAllister, 337 U. S. 783; Nolan v. General Seafoods Corp., 112 F. 2d 515). Since the record before us indicates that Maintenance was not appellant’s employer, it does not appear that appellant has a Jones Act cause of action against Maintenance. Of course, in a new trial, appellant should have an opportunity to show whether Towing and Maintenance are really the same entity. If appellant is successful in this regard, he would then have a cause of action against Maintenance under the Jones Act. This, of course, is a question which is in the province of the triers of fact should the trial court find sufficient evidence to warrant submission of that issue to the jury.
Accordingly, the order appealed from should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
Order reversed and a new trial granted, with costs to abide the event.

. The parties have stipulated that although the Dalzellable is owned by respondent Tugboat Dalzellable, Inc., this corporate entity is the same as respondent Dalzell Towing Co.

. The lessor 2581 Richmond Terrace Realty dorp, was formerly a codefendant, but the action was discontinued against it.

. It should be noted that contributory negligence is not a defense under the Jones Act (see Carter v. Schooner Pilgrim, 238 P. 2d 702), but may be applied in mitigation of damages (see Antoine v. Lake Charles Stevedores, 376 F. 2d 443, cert. den. 389 U. S. 869).