### THE CARRIER DOVE.

#### RICH v. WILLIAMS et al.

(Circuit Court of Appeals, First Circuit.    October 27, 1899.)

#### No. 306.

1. SEAMEN—LIEN OF FISHERMEN—VOYAGE ON LAYS.

Fishermen are seamen, and, except as modified by their peculiar contracts, express or implied, are protected by the law as other seamen are. and for their wages may look to the vessel, her master, and ordinarily her owners.

2. SAME.

The fact that the master, who is part owner of a fishing vessel, charters it from his co-owners for a voyage on the "quarter clear lay," and afterwards engages a crew, agreeing to give them the same share of the catch as though they had together chartered the vessel, does not render the members of the crew co-charterers; but they have all the rights of seamen, including the right to a lien on the vessel, as for wages, for the value of their share of the catch.

Appeal from the District Court of the United States for the District of Massachusetts.

Eugene P. Carver (Edward E. Blodgett, on the brief), for appellant. John W. Keith and Robert Homans, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

WEBB, District Judge.    The appellant appears to misapprehend the relations of the libelants to the vessel and her owners.    The evidence in the district court is not reported.    Instead of it, the parties present to this court what is denominated an "agreement as to evidence."    This agreement is not full enough, in respect to many ques-

tions which arise, to show clearly the details of the contract of the appellants with Manuel Silva, the captain, and that of the captain with the members of the crew. We are left to discover those matters, as best we can, from what this agreement contains; and, examining it carefully, we do not find anything to support the appellant's statement of the relation of the crew to the vessel or to the master. We are satisfied that the claimants, together with Manuel Silva, were owners of the schooner Carrier Dove, and that, being so co-owners, Silva contracted with the appellants to take the schooner and employ her in the fishing business on what is called the "quarter clear share." At that time no crew had been engaged, and, so far as can be perceived, neither Silva nor the other owners had any knowledge of the libelants. By his contract with his co-owners, Silva was only to pay for the use of the vessel one quarter share of the gross catch. As to the fishermen whom he should engage, he was free to pay wages in money, or, in lieu thereof, to give to each such a share of the catch as he might agree upon with each. Of the vessel's quarter, he would be entitled to his share, proportionate to his ownership of the vessel. In fact, he gave the members of the crew the same shares of the profits of the business that they would have, according to custom, if he and they together, and as contracting parties, had chartered the schooner on the "quarter clear lay." But this did not make the crew co-charterers with Silva. It was only a way of determining their compensation, substituting the uncertain returns of the business for a fixed rate of wages. Had they been co-charterers, they would be liable to the claimants for the proportion of the catch due the vessel.

To the erroneous theory of the claimants, of a charter by the crew, all the difficulty and doubt about the rights of the parties may readily be attributed. Engaging to become members of the crew, under the circumstances of this case, did not give to the libelants all the rights and powers, nor did it subject them to the duties and responsibilities, attaching under the usages and customs of the "quarter clear lay," that they would have and be subject to if they had themselves been parties to the contract for the use and employment of the vessel. They had not a full right and power to select their own agent for the sale of the catch, for the simple reason that they were not partners. They were hired fishermen, whose wages were dependent on the success of the fishing in which they engaged. Fishermen are seamen, having uses and customs peculiar to their business, but are at the same time, except as modified by their peculiar contracts, express or implied, protected by the law as other seamen are. For their wages they can look to the vessel, her master, and ordinarily her owners. But when the master by his contract has become owner pro hac vice, as was the fact in this instance, and well known to them, they cannot look to the owners personally. The decree of the district court is affirmed, with interest, and one bill of costs of appeal is awarded to the appellees.