KAUFMANN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 123.

1. WASHED REVENUE STAMPS—SALE—EVIDENCE—SUFFICIENCY.

One whom defendant knew to be a dealer in washed revenue stamps asked him to assist in finding purchasers for stamps which such dealer said were a part of the estate left by his deceased uncle. Defendant repeatedly declared he would have nothing to do with washed stamps, and was assured that they were genuine. Defendant found a man who agreed to assist in selling the stamps at 50 per cent. discount, after such dealer had furnished three "samples" which were genuine. The dealer gave defendant an envelope said to contain $663 in stamps, for which $331.50 was expected, and defendant handed the envelope, unopened, to the one who had agreed to assist in selling. The stamps were then taken to another man, who was about to sell them, when they were seized. Defendant was indicted for knowingly having in his possession and offering for sale washed and restored revenue stamps. There was some testimony that it is a custom for genuine stamps to be sold in the neighborhood when these were offered at large discounts. Held, that the evidence was sufficient to justify a conviction.

2. SAME—INSTRUCTIONS—SOURCE OF INFORMATION.

Defendant's requests to instruct the jury that, before they could render a verdict of guilty, they must be satisfied beyond a reasonable doubt that he had inspected the stamps, and had seen that they were canceled and washed, or else there must be proof that such dealer had told defendant that the stamps were washed and canceled, were properly refused.

3. APPEAL—EXCEPTIONS—GENERAL.

An exception reserved "to the court's refusal to charge such of the requests as were not charged" does not raise any point for review as to any of the charges so refused.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of conviction of the circuit court for the Southern district of New

York, entered upon the verdict of a jury rendered October 15, 1901, upon an indictment charging defendant with the crime of knowingly having in his possession washed and restored adhesive documentary revenue stamps, and of willingly and knowingly offering the same for sale.

Chas. A. Bacon, for plaintiff in error.
W. N. Parsons, for the United States.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The brief filed for defendant concedes that there is no dispute upon the substantive facts. Defendant, not long before the transaction on which the indictment was founded, met and had several interviews with one Miller, whom he had met before. According to his story, in one of these interviews Miller asked him if he did not have an acquaintance among the members of the Exchanges who used revenue stamps, and if he could not dispose of some revenue stamps owned by him. The explanation that Miller gave to Kaufmann for his possession of them was that he had obtained them from the estate of a deceased uncle. He further told Kaufmann, as defendant testified, that the stamps were in the original form in sheets, that some of them were in full sheets as they came from the government, that none of them were unattached, and that they were in the original form, with the original gum. Thereupon defendant had an interview with one Groff, manager of a broker's office in New York City, and asked him if he could dispose of some revenue stamps on the Consolidated Exchange. After one or more interviews with the two men separately, in which Miller agreed to sell at a discount of 50 per cent., and Groff said he could dispose of them at that figure, defendant, at Groff's suggestion, asked Miller to furnish samples. The latter gave them two $3 stamps and one $1 stamp, which he examined and showed to a stamp dealer, and which apparently were genuine. On March 5, 1901, Miller met defendant and one McComish, who had agreed to assist in selling the stamps, at the entrance of No. 47 Broadway, and Miller and defendant then crossed the street to No. 60 Broadway (the Consolidated Stock Exchange), where Miller handed an envelope or package to defendant, who thereupon handed the same to McComish; Miller informing McComish that the same contained $663 in stamps, and that he expected to receive $331.50 for the same. McComish took the stamps to one Casper Hauser, who inspected the stamps and was about to sell them, when they were seized by a revenue officer. There was uncontradicted and satisfactory evidence that in said envelope or package were washed and restored adhesive documentary revenue stamps.

Defendant's counsel frankly concedes that the only matter in dispute is whether or not defendant knew, or was bound by the circumstances to know, that the stamps contained in said envelope or package were washed and restored adhesive documentary revenue stamps. The jury found that he knew, or was bound to know, that the stamps were of that character. That verdict was rendered after a charge which instructed them that this was the vital point in the

case, and that they must find beyond a reasonable doubt with reference to every element of the charge named. Over and over again they were instructed that they could not convict unless they were satisfied beyond reasonable doubt that the defendant had committed the precise offense. The very last instruction was a request to charge, submitted by defendant, and charged as requested:

"The jury must be satisfied beyond a reasonable doubt that the said stamps were canceled before the delivery to Groff; and if the jury are not so satisfied, but are satisfied only that the defendant believed that there was something wrong about the said stamps, then the defendant must be acquitted."

An exception was duly reserved to a refusal to direct a verdict of acquittal, and the point is thus presented here.

Some effort is made in the brief to sustain the proposition that the evidence fairly warranted a conclusion that defendant was innocently ignorant of the fact that there was anything wrong with the stamps, and that he believed they were genuine, and their purchase and sale at 50 per cent. discount a perfectly legitimate transaction. In support of this reference is made to Miller's story of his deceased uncle, to the genuineness of the three stamps he offered "as a sample," and to some testimony to the effect that it is a custom for good genuine original stamps to be sold in the neighborhood of broker's offices at large discounts. The jury evidently apprehended quite accurately what this testimony of men who had bought stamps at a discount really imported. It is unnecessary to discuss the proposition whether or not any intelligent mind could be reasonably credited with the belief that genuine stamps would be offered at 50 per cent. discount and required for their sale the amount of secret negotiation which characterized this transaction. It is suggested, however, that defendant supposed that the stamps which Miller had for sale were stolen, rather than washed. Of course, if he really believed they were stolen, it cannot be said he knew they were washed; and, if the circumstances were such as to warrant either belief equally, the jury would not be warranted in finding that he entertained the one, rather than the other. But we entertain no doubt at all, upon the evidence, that defendant really believed, as he had good grounds to believe, that the stamps were washed and restored.

At the outset it must be assumed that he knew there was something wrong with them,—that they were either forged, or stolen, or washed. The proposition that he supposed otherwise is absurd. The circumstances so challenged his intellect that he could not dull it sufficiently to reject the conviction thus forced upon him. It is to be expected, from the difficulties and dangers attending their production, that forged revenue stamps are less likely to be met with than stolen or washed ones. The three offenses of which the stamps might have been the corpus are of very different grade in the opinion of the average man. There are individuals who would not plunder their neighbors by stealing their property, but who would be troubled with no more conscientious scruples about restoring a used stamp than they would about deceiving a customs inspector. That defendant must have known there was something wrong with the stamps hardly admits of

question, and it was far more natural that he should suppose them to be washed stamps, rather than stolen or forged stamps. If this were all, it would, perhaps, not warrant a jury in holding that the element of precise knowledge was established beyond reasonable doubt; but the statements made by the defendant on the witness stand so clearly indicate what was really in his mind at the time of his receipt and delivery of the envelope as to eliminate all doubt. He had heard general talk around the streets about washed stamps, the papers were full of it, there had been several convictions for dealing in them, and he knew the selling of washed stamps was going on. He knew Miller dealt in washed stamps, because he first made his acquaintance in Ludlow Street jail, where Miller was incarcerated "for something in connection with washed stamps." He knew Miller had been convicted of the offense. At the very outset, and repeatedly during his interviews with Miller, he told the latter "he would have nothing to do with a washed revenue stamp." He told him he "didn't want to have anything to do with washed stamps, and told him so in terms he could not have misunderstood." He admitted that he himself would not know a good stamp from a washed one. His volunteered protest against washed stamps shows that it was just such stamps that he was expecting to get from Miller. He testified, further, that he relied entirely on Miller's statements that these were genuine unused stamps which had come to the latter from his uncle's estate, and which were in sheets (a statement defendant seems to have been careful not to try and verify); but the jury was under no obligation to credit these latter statements. We are troubled with no more doubt than they were in reaching the conclusion that, knowing Miller to be a dealer in washed stamps, he expected to get washed stamps from him, and that, despite all his protestations against having anything to do with them, he really believed such stamps were in the package he handled.

Error is assigned to the refusal of the court to charge certain requests. The general form of the exception reserved at the trial would fairly preclude any discussion of these assignments. They are, however, without merit. The second request reads as follows:

"The jury must be satisfied from the testimony beyond a reasonable doubt that the defendant had inspected the said stamps, and had seen that they were canceled and washed, prior to the delivery of said stamps to the witness Groff, before they can render a verdict of guilty against the defendant."

The seventh request reads:

"The jury must be satisfied beyond a reasonable doubt that the defendant either actually inspected the stamps before he delivered them to Groff, and thus knew them to be washed and canceled, or else there must be proof that Miller had told him that the said stamps were washed and canceled before he delivered them to Groff."

The difficulty with both these requests is that defendant might have acquired knowledge as to the character of the stamps otherwise than by himself inspecting them or by the statements of Miller.

Error is assigned that the judge, having charged the fifth request as prayed, further charged the jury as to defendant's means of knowledge. No exception raises this point; the only one reserved being

"to the court's refusal to charge such of the requests as were not charged."

The judgment is affirmed.