LEANDRO J. COSTA *vs.* GORTON-PEW VESSELS COMPANY.

Suffolk.    March 16, 17, 1922. — July 1, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Contract,* Implied.  *Provincetown Lay.  Custom.*

By an agreement reached on April 20, 1917, between the New England Coast Fishermen's Union, which had inaugurated a strike, the Gloucester branch of that union and the Masssachusetts Committee on Public Safety, it was stipulated: "The captain or owner will furnish the gear and collect ten per cent . . . of the share of each member of the crew on each trip until the original cost of the gear is paid, then the gear shall be 'free gear' so called. No charge is to be made for the use of the gear. Lost and condemned gear, and the general upkeep of the gear shall be paid for out of the gross stock." While this agreement was in full effect, the captain of a vessel which was sailing on the one fifth

Provincetown lay and which was subject to the agreement, purchased of a dealer in fishermen's outfits and supplies fishing gear to replace lost and condemned gear and the purchase was delivered on board the ship. Both parties knew of the agreement. In an action against the owner of the vessel for the purchase price of the goods, a verdict was ordered for the defendant, and it was *held*, that

(1) The captain had no express nor implied authority to act as the defendant's agent;

(2) A custom that the owner should pay for new gear and that the captain had authority to pledge his credit was of no effect to bind the owner;

(3) The verdict for the defendant was ordered properly.

CONTRACT for $709.44 upon an account annexed containing twenty items of goods purchased of the plaintiff in the months beginning with August, 1918, and ending with January, 1919. Writ dated March 3, 1919.

In the Superior Court, the action was tried before *Hammond*, J. Material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant and reported the action to this court for determination, it being agreed that judgment should be entered for the plaintiff for the amount claimed in the declaration if it should be determined that the action should have been submitted to the jury; otherwise, that judgment should be entered on the verdict.

*W. P. Murray*, for the plaintiff.

*F. H. Tarr*, for the defendant.

BRALEY, J. The captain of a fishing vessel owned by the defendant bought of the plaintiff, a dealer in fishermen's outfits and supplies, fishing gear to replace lost and condemned gear, which was delivered on board the ship. The question for decision is, whether the defendant is responsible for the amount of the purchase. While there is no evidence, and no claim is made, of any express authority given by the defendant, it is contended that the captain "had an implied authority to bind the owners arising from custom and the situation."

The vessel sailed on what is called the one fifth Provincetown lay when the debt was contracted, and the jury could find "that the one fifth lay is a lay where the bill for the lost and condemned gear is taken from the gross stock, and one fifth of the remainder goes to the owner of the vessel, and four fifths of the remainder go to the captain and crew." It has been decided, that a fishing vessel sailing under such conditions is in effect chartered to the

captain who is not the agent of the owner of record, but for the time being is himself the owner even if the record owner has a share in the proceeds. And the owner has never been held impliedly responsible for debts incurred by the captain for fishing gear or other necessary supplies required for the trip. *Tucker* v. *Stimson,* 12 Gray, 487. *Rich* v. *Jordan,* 164 Mass. 127. *Adams* v. *Augustine,* 195 Mass. 289, 291. *The Francis J. O'Hare, Jr.* 229 Fed. Rep. 312.

The plaintiff accordingly admits that previous to April 20, 1917, the captain would be solely liable for the cost of the gear. But in that year a strike was inaugurated by the New England Coast Fishermen's Union affiliated with the International Seaman's Union of America and the American Federation of Labor. The dispute came on for investigation before the committee of public safety, and an agreement was reached which was signed and approved on April 20, 1917, by the masters and owners, the coast fishermen's union, the Gloucester branch of the union, and the committee. One of the grievances of which the striking fishermen complained appears in the eighth resolution of the union, "That the owners furnish all fishing gear on trawl fishing vessels and lost and condemned gear to be paid for out of the gross stock and that the charge of 10% for use of lines be entirely eliminated after March 1, 1917." The agreement recites as to resolution number eight, that "it is mutually agreed as follows: The captain or owner will furnish the gear and collect ten per cent . . . of the share of each member of the crew on each trip until the original cost of the gear is paid, then the gear shall be 'free gear' so called. No charge is to be made for the use of the gear. Lost and condemned gear, and the general upkeep of the gear shall be paid for out of the gross stock." It is manifest that under this agreement, which was in full effect and known to the parties when the new gear was bought, the captain had no express nor implied authority to act as the defendant's agent. If new gear became necessary, the captain indeed could furnish it, but his right to reimbursement rested on the percentage to be collected on the share of every member of the crew on each trip until the cost price was paid, and not on any liability of repayment imposed on the owner. The fifth lay under which the vessel was being managed rested on the agreement relating to the necessary re-

placement of gear, and while the plaintiff introduced evidence that, notwithstanding the unambiguous wording of the agreement, custom had sprung up which was controlling, that the owner should pay for new gear and that the captain had authority to pledge his credit: "customs which are in conflict, either with the express or implied terms of the contract, or undertake to avoid the effect of settled rules of law, or to make for a definite class of cases or persons a law singular unto such class, are bad." *Conahan* v. *Fisher*, 233 Mass. 234, 242, and cases collected.

The case at bar does not come within general commercial customs referred to and applied in *Barrie* v. *Quinby*, 206 Mass. 259, 264, 265, and *Procter* v. *Atlantic Fish Co. Ltd.* 208 Mass. 351, 355. It is also clearly distinguishable from *Paine* v. *Silva*, 168 Mass. 432; *S. C.* 171 Mass. 276, on which the plaintiff relies, where the defendant, one of two owners, personally ordered some of the articles and directed that they should be charged to the vessel, while the rest of the purchase was furnished on the captain's orders at the request of the defendant, or of an agent of the two owners. *Adams* v. *Augustine*, 195 Mass. 289, 291.

A verdict for the company was directed rightly, and by the terms of the report judgment thereon for the defendant is to be entered.

*So ordered.*