## CROMWELL v. SLANEY.
### No. 2781.

Circuit Court of Appeals, First Circuit.
June 30, 1933.

See, also (D. C.) 38 F.(2d) 304.

George L. Dillaway, of Boston, Mass., for appellant.

A. F. Christiansen, of Boston, Mass. (Sylvester F. Whalen, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a judgment of the District Court of Massachusetts following a verdict by a jury for the appellee.

The plaintiff's intestate, Gregory J. Slaney, was her husband, whose vocation was that of a seaman, and who was experienced in the practice of fishing with trawls from dories. He was employed as a member of the crew of the fishing schooner Henrietta, which was equipped with an auxiliary crude oil engine. The vessel, which was owned by the defendant, sailed from Boston on March 29, 1929, and arrived on the fishing grounds eighteen miles off Chatham in the early morning of the 1st day of April.

Sixteen dories were then put out and trawls set. The weather in the early part of the forenoon was pleasant. The schooner sailed along the line of dories and took on board the catch, arriving at Slaney's position about 11 o'clock a. m. At about 11:30 o'clock a thick fog set in. All the other dories returned to the schooner, and all the men were on board at about 1 p. m. except Slaney, who did not return. The captain, after standing by for some time, then cruised about, thinking that, as the wind had changed, Slaney might have lost his bearings. The schooner remained in the vicinity of the fishing grounds for twenty-four hours, but failed to locate him. During all the time it was sounding a Lothrop mechanical horn. It had formerly been equipped with a compressed air whistle, which is required for vessels operated by machinery when "under way," and which produced a much louder sound that the Lothrop horn, but it had been stolen or removed from the boat while in port and its absence was not discovered until the schooner had left port on this trip.

The plaintiff relies in her first count on the negligence of the owner, his agents, officers, and employees, in failing to keep a compressed air whistle on board the vessel in good working order and condition; and in her second count alleges that it was the duty of the owner to furnish her intestate with a seaworthy vessel, and to have on board the proper equipment for the protection of life and

safety of her intestate; and that through the negligence of the defendant there was not on board the necessary and proper equipment to call her intestate back to the vessel after the heavy fog came in; and through the negligence of the defendant the plaintiff's intestate lost his life, for which it is claimed the defendant as owner is liable.

It is unnecessary to consider whether the plaintiff could have recovered under section 1 of chapter 111 of the Act of March 30, 1920, 41 Stat. 537 (46 USCA § 761), relating to death on the high seas by wrongful act, since she expressly bases each count on section 33 of chapter 250 of the Act of Congress passed June 5, 1920, 41 Stat. 1007 (46 USCA § 688), known as the Merchant Marine Act, or more commonly the Jones Act, which also incorporated the provisions of chapter 149, 35 Stat. 65 (45 USCA §§ 51–59), relating to the recovery of common carriers in case of death of an employee due to negligence of the carrier.

While it may or may not follow that the vessel was unseaworthy due to negligence of the owner in failing to inspect the vessel before leaving port to determine whether the compressed air whistle was on board, in order for the representative of a deceased seaman to recover under the Merchant Marine Act under either count, the relationship of employee and employer must be shown to exist between the seaman and owner, since only by virtue of this act can there be a recovery for the death of a seaman, there being no liability in admiralty in case of death resulting from the unseaworthiness of a vessel. Kunschman v. United States (C. C. A.) 54 F.(2d) 987; Lindgren v. United States, 281 U. S. 38, 50 S. Ct. 207, 74 L. Ed. 686.

The plaintiff, therefore, to recover in this action, must prove not only that her husband is dead, and his death was due to a personal injury resulting from the negligence of the defendant, but that he was at the time of his death in the employ of the defendant.

The Henrietta on this trip was being operated on what is known as a "broken fifth lay," under which, out of the gross receipts of the trip, was first taken the lost and condemned gear, a certain percentage for the engineer, and the watchman's charge. Of the balance the vessel was to take one-fifth, out of which the captain had a certain percentage, viz., 12½ per cent. The remainder of the proceeds of the catch, after paying for all supplies, including food, bait, ice, fuel, lubricating oil, etc., and an agreed-upon sum to the cook, was to be divided among the captain and crew.

The operation of fishing vessels under agreements, or lays, so called, for sharing the proceeds of the catch, has been familiar to those engaged in the business and to the courts for more than a century; and it has been held by the courts that, under a "fishing lay," where the captain employs the members of the crew and controls all the operations of the vessel, both in purchasing supplies for the voyage, in determining where he will fish, how long, and in disposing of the catch and settling all the bills, he becomes the owner pro hac vice, and that the crew is in the employ of the master and not of the owner. The Carrier Dove (C. C. A.) 97 F. 111, 112; Adams v. Augustine, 195 Mass. 289, 290, 291, 81 N. E. 192; Costa v. Gorton-Pew Vessels Co., 242 Mass. 294, 136 N. E. 100; The Francis J. O'Hara, Jr., Case (D. C.) 229 F. 312; The Mettacomet (D. C.) 230 F. 308.

In the case of The Carrier Dove, where a fishing vessel was operated on what is known as a "quarter clear lay," the court said:

"Fishermen are seamen, having uses and customs peculiar to their business, but are at the same time, except as modified by their peculiar contracts, express or implied, protected by the law as other seamen are. For their wages they can look to the vessel, her master, and ordinarily her owners. But when the master by his contract has become owner pro hac vice, as was the fact in this instance, and well known to them, *they cannot look to the owners personally.*" (Italics supplied.)

The defendant on appeal relies on certain assignments of error based on a failure or refusal to give requested rulings to the effect that the plaintiff cannot recover in this action under section 33 of chapter 250 of the Act of June 5, 1920, unless the relation of employer and employee exists between the owner and the plaintiff's intestate; that the Henrietta having sailed on a one-fifth lay, the plaintiff's intestate was not in the employ of the defendant. Instructions on these issues clearly should have been given, but none were given at all, and, we think, to the prejudice of the defendant. As a result, one of the decisive issues in the case was not presented to the jury.

Objection is made, however, that the exceptions to the failure to give the requested instructions were not properly saved. The bill of exceptions states: "So far as not covered by the charge, the defendant duly saved exceptions to the denial of his requests." But

"duly," according to every authority, signifies "according to law." See title, Duly, Words and Phrases, First, Second, and Third Series. If the defendant's exceptions to the requested ruling were "duly saved," it cannot be said that whatever was necessary to properly preserve such exceptions was not done, unless the contrary appears. The bill of exceptions was allowed by the court. If it did not correctly state the facts, the court should have insisted on a corrected statement. We assume, therefore, in this case, that the refusal or failure to give the particular instructions above referred to was *duly* called to the attention of the court before submission to the jury.

An exception taken in this form has been held to be objectionable, where instructions were actually given on the points covered by the requested rulings, and no specific exceptions were taken to the instructions as given, Kaufmann v. United States (C. C. A.) 113 F. 919; or where the requested instructions were very numerous, Partridge v. B. & M. R. Co. (C. C. A.) 184 F. 211, American Sugar Refining Co. v. Nassif (C. C. A.) 45 F. (2d) 321, 326, since the trial court cannot be compelled to assume the burden during the trial of analyzing a great number of instructions to determine their pertinency, or the appellate court of comparing those given with those refused. In the case of Partridge v. B. & M. R. Co. there were forty-seven requested instructions, and in the case of American Sugar Refining Co. v. Nassif the requests were substantially covered in the charge and no exceptions were taken to those given in the charge. In the latter case this court said: "The federal courts hold firmly to the doctrine that no duty rests upon the appellate court to assume the burden of relating requested instructions to those actually given in the charge, in order to determine whether the trial court was in error."

In the case now before this court, no instructions were given at all on the issues covered by the requested instructions above referred to, and, of course, no exceptions could be taken to the charge itself on these points. Without commending the method followed in saving exceptions, since plain error was committed in this instance, and to the prejudice of the defendant, by the refusal to give any instructions covering the requested rulings on so vital an issue as the relation between the owner and the seaman under the "lay" in this case, and since the requests concisely and clearly raised the chief issue of law involved in the case, we think an exception to the refusal to give the requested or any instructions on this issue must be sustained, and the case remanded for a retrial under proper instructions on this issue.

The defendant also assigned as error a refusal to give a requested instruction that the burden of proof is on the plaintiff to prove the death of the plaintiff's intestate, and that it occurred from some cause set forth in the declaration, and a cause for which the defendant is personally liable beyond conjecture, surmise, or imagination. It may be a question whether, under the form of the exceptions as set forth in the bill, an exception was properly preserved to the failure to give the ruling requested, since instructions on this issue were given without exceptions taken to that part of the charge, although the instructions given were inadequate to present to the jury the burden on the plaintiff, viz., that she must by some substantial evidence remove the cause of the death of her intestate from the realm of surmise and conjecture.

The judgment of the District Court is vacated, the verdict is set aside, and the case remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.

BINGHAM, Circuit Judge (concurring).

I agree that the judgment must be vacated, the verdict set aside, and the case remanded for a new trial. I wish to add, however, a word to what has been said. The question whether the relation of employer and employee existed between the owner and the plaintiff's intestate involved a material question of fact which was not submitted to or passed upon by the jury. If the owner and the master stood to one another as lessor and lessee of the boat, then the master in the management of the boat, the employment of the men, etc., could be found to be the principal or owner pro hac vice, and the relation of employer and employee would not exist between the owner and the men, although it would between the master and the men. The Carrier Dove (C. C. A.) 97 F. 111. But there was evidence that the owner received a one-fifth lay and out of this paid the master 12½ per cent. Where the relation of lessor and lessee in fact exists, it certainly is not usual for the lessor to pay the lessee for operating the leased property. The usual thing is for the lessee to pay the lessor rent. It therefore would be open to the jury on this evidence to find that the owner did not let the boat to the master, but that the 12½ per cent. of the owner's lay was paid to the master, as the owner's agent, for his services in taking

charge of the boat, hiring the men, conducting the fishing trip, and dividing the proceeds as agreed.

If the jury should conclude that in doing these things the master acted as the agent of the owner, then they could find that the relation of employer and employee existed between the owner and the men, including the plaintiff's intestate.